GULOTTA, Judge.
The central issue with which we are confronted is whether funds can be withdrawn from a homestead account by a third party without written authorization from the person in whose name the account is placed.
In July, 1956, a homestead account was opened in the Eureka Homestead in the names of “Clarence Doescher or Louis J. Doescher”. The accumulated principal and interest in the sum of $16,956.43 was withdrawn on January 8, 1969 by one of the defendants — Agnes Doescher Marcotte — a sister of Clarence and Louis Doescher. At the time of the withdrawal, the account passbook was presented to the homestead by Mrs. Marcotte and a receipt for the withdrawn funds was signed “Clarence F. Doescher by Agnes D. Marcotte”. A check issued to Clarence Doescher or Louis J. Doescher for the total amount withdrawn was endorsed “Clarence Doeshcer signed by Agnes D. Marcotte”. On the same date, and apparently at the same time, a written subscription for 320 shares of Eureka Homestead stock in the amount of $16,-000.00 was signed by Clarence F. Doescher and Agnes Doescher Marcotte. An “X” appears in a box next to the word “Transfer” on the subscription request. Another similar subscription for 19 shares of Eureka Homestead stock, dated January 8, in the amount of $956.43 was signed by Clarence F. Doescher and Agnes Doescher Marcotte. With the check endorsed as indicated above, Agnes Marcotte, on the same day, January 8, opened another joint account in the Eureka Homestead in the names of “Clarence F. Doescher or Agnes D. Marcotte”. No written request for withdrawal or receipt for the withdrawn funds was signed by Clarence. Though the written withdrawal request-receipt was signed by Agnes for Clarence, no written power of attorney was furnished to the homestead authorizing Marcotte to withdraw funds from the account or endorse checks in the name of Clarence F. Doescher or Louis Doescher. Clarence F. Doescher died on December 7, 1969.
Subsequent to Clarence’s death, Agnes Marcotte withdrew the funds from the Doescher or Marcotte account, endorsed the check and opened a third joint account in the names of “John H. Doescher or Agnes D. Marcotte”. The funds, together with accumulated interest, are presently in the Eureka Homestead in the joint “John H. Doescher or Agnes D. Marcotte” account.
The trial judge dismissed plaintiff’s suit for the amount of the funds on deposit initially in the account of Clarence Doesch *347 er or Louis J. Doeseher and now in the account of John H. Doeseher or Agnes D. Marcotte, and for accrued interest, damages and attorney’s fees. In written reasons, the trial judge concluded that the evidence had established that the funds on deposit initially in the name of Clarence F. Doeseher or Louis J. Doeseher were in fact the sole property of Clarence; that Agnes Marcotte had authority from Clarence to transfer the funds; and that plaintiff did not own any of the funds transferred.
While it is true that the record generally supports the trial court’s conclusion that the money originally on deposit was contributed to Clarence by the father of Clarence, we do not reach this factual question. At the outset, we find no written authorization either from Clarence or Louis to Agnes Marcotte to withdraw the funds initially on deposit in the homestead in the names of “Clarence Doeseher or Louis J. Doeseher”. In the absence of a written power of attorney, neither the receipt for the funds signed by Agnes Marcotte for Clarence, nor the endorsement of the check by Agnes Marcotte for Clarence, nor the subscription for homestead stock, signed by Clarence and Agnes, can satisfy the requirement for written authorization from Clarence to Agnes to withdraw the funds on deposit. Noticeably absent from the documentary evidence is a withdrawal slip signed by Clarence or Louis or a written power of attorney. We consider it worthy of mention at this point that Clarence’s signature could have been obtained on a withdrawal slip, or the receipt, or on the endorsement of the check. No explanation is made in the record why Clarence’s signature was obtained on the subscription dated January 8, but not on the receipt and check dated the same day.
Further, Cheryl Van Kregten, a teller at Eureka Homestead who handled the transaction, acknowledged that no written authority had been given by Clarence Doescher to Agnes to withdraw the funds from his account. Mrs. Van Kregten also stated that she had not found any written authority permitting an account to be opened with a check made out to a person named on the check and not endorsed by that person. This witness acknowledged that what had been done in this case was contrary to the homestead’s policies. However, Katie M. Doeseher — secretary-assistant treasurer of the homestead and an aunt of Clarence, Louis and Agnes — testified that Clarence had considered the money in the joint account as belonging to him and that he had expressed a desire to this witness that the money be transferred to an account in his and Agnes’s names.
Support exists in the record for a conclusion that Clarence orally authorized Agnes to withdraw the funds in the original account and place them into a joint account in the names of Clarence or Agnes. However, oral authorization to the homestead by the person in whose name a homestead account is placed permitting a third party to withdraw funds from the account is not sufficient authority to warrant withdrawal of the funds or transfer of the funds into another account. LSA-R.S. 6:806, relating to homestead and savings and loan associations, in pertinent part, provides:
“Except as otherwise provided in the instrument or document evidencing a savings account or shares, any member, his authorized representative or a person authorized by operation of law may present at any time a written appiication for withdrawal of all or any part of his un-pledged savings accounts or shares. * * * ” (emphasis ours)
Further, in LSA-R.S. 6:922, relating to powers of attorney, a requirement is made that the representative of the person in whose name the account is placed be authorized “in writing” to make “withdrawals”. LSA-R.S. 6:922, in pertinent part, provides as follows:
“Any association may continue to recognize the authority of an attorney-in-fact authorized in writing to manage or to make withdrawals either in whole or in part from the savings account or of the shares and the sums paid in on account of unpledged savings accounts or shares of a member, whether minor or adult, until it *348 receives written notice or is on actual notice of the revocation of his authority. * * * ” (emphasis ours)[1]
Needless to say, to permit withdrawals by third parties based on oral authorization would result in chaos in the homestead and banking businesses.
Accordingly, we conclude that no authority existed for the withdrawal of the funds in the Eureka Homestead in the names of “Clarence Doescher or Louis J. Doescher”. Any subsequent transfer of the funds is null and without effect. Accordingly, plaintiff is entitled to have the funds presently on deposit in the Eureka Homestead in the names “John H. Doescher or Agnes D. Marcotte” transferred to the original account in the names “Clarence Doescher or Louis J. Doescher”.
We find no merit in defendant’s suggestion that the subscription for stock in the Eureka Homestead dated January 8, signed by Clarence Doescher and Agnes Marcotte, on which the word “Transfer” appears, constitutes written ratification of the oral authorization to withdraw the funds. This subscription of Eureka Homestead stock does not refer to any particular fund or account which is to be used for the purchase of the subscribed Eureka stock. No indication appears on the subscription form that the funds on deposit in the original account are to be used for the purchase of the newly-subscribed Eureka Homestead stock.
We further reject defendants’ claim that plaintiff’s action is based upon “conversion of property” and as such is a tort action which prescribes in one year. According to defendants, the suit was filed on July 21, 1972, more than one year from the time that the transaction had taken place, and more than one year since plaintiff had acquired knowledge of the transaction. Although plaintiff’s pleading is labeled a “Petition for Conversion of Property” and as such may sound in tort, courts look to the content of pleadings to ascertain the nature of a complaint, rather than to the labels placed on those pleadings. LSA-C.C.P. arts. 865 and 5051. Northern Assurance Company of America v. Waguespack, 304 So.2d 865 (La.App. 4th Cir. 1974); Bert’s Boat Works, Inc. v. Cuccia, 278 So.2d 134 (La.App. 4th Cir. 1973). When the allegations contained in the petition are considered, we conclude plaintiff’s claim is based upon a breach of contract which prescribes in ten years. LSA-C.C. art. 3544.
Finally, we have not ordered the homestead to place plaintiff in possession of the funds now on deposit in the names “John H. Doescher or Agnes D. Marcotte”, nor awarded a judgment in favor of plaintiff against the homestead for the amount of the funds on deposit, as prayed for by plaintiff. Our decision ordering the transfer of the funds to the original account may very well result, hereafter, in the withdrawal of the funds by Louis. By the same token, the heirs of Clarence, after the finality of this judgment, might seek injunctive relief and assert a succession claim to the ownership of the funds. However, as we view this matter, the succession’s claim to the ownership of the funds is not before us.
Accordingly, the judgment dismissing plaintiff’s suit is reversed and set aside. It is now ordered, adjudged and decreed that the funds in the Erueka Homestead in the names “John H. Doescher or Agnes D. Mar-cotte” be transferred to an account in the Eureka Homestead in the names “Clarence Doescher or Louis J. Doescher”. Costs to be paid by defendants.
REVERSED AND RENDERED.
REDMANN, J., concurs.
LEMMON, J., concurs and assigns reasons.
BOUTALL, J., dissents.

. For other examples of the requirement th; see LSA-R.S. 6:744(C); LSA-R.S. 6:768( transactions with the homestead be in writing,